**FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(1) John Venizelos 80556-053
    **(Name of Plaintiff)**     **(Inmate Number)**

F.C.I ESTILL, P.O. BOX 699
ESTILL, S.C. 29918
    **(Address)**

(2) _____
    **(Name of Plaintiff)**     **(Inmate Number)**

_____
    **(Address)**

**(Each named party must be numbered,
and all names must be printed or typed)**

        **vs.**

(1) D.H.O. Bittenbenner

(2) S.I.S. Tech Tomlinson

(3) C.O. BORD
    **(Names of Defendants)**

**(Each named party must be numbered,
and all names must be printed or typed)**

_____
        **(Case Number)**

**CIVIL COMPLAINT**

**FILED
SCRANTON**

JUL 1 7 2019

Per _Amo_____
     **DEPUTY CLERK**

**TO BE FILED UNDER:**    /    **42 U.S.C. § 1983 - STATE OFFICIALS**

                   ✓    **28 U.S.C. § 1331 - FEDERAL OFFICIALS**

**I.   PREVIOUS LAWSUITS**

    **A.**    If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

      2241 - or 3:18 CV-00119-GMG-RWT-2018

HONORABLE JUDGE Gina M GROH

_____

_____

**1**

## II.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A.   Is there a prisoner grievance procedure available at your present institution? __✓__ Yes ____ No

B.   Have you fully exhausted your available administrative remedies regarding each of your present claims? __✓__ Yes ____ No

C.   If your answer to "B" is <u>Yes</u>:

1.   What steps did you take? _BP-10 AND 11_____

_____

2.   What was the result? _The INCIDENT reports Were all_

_~~too~~ expunged._

D.   If your answer to "B" is <u>No</u>, explain why not: _____

_____

## III.   DEFENDANTS

(1) Name of first defendant: _D.H.O. Bittenbender_

Employed as _D.H.O. officer_ at _Schuylkill F.C.I_
Mailing address: _P.O.Box 759, MINERSville PA 17954_

(2) Name of second defendant: _S.I.S Tech TOMLINSON_
Employed as _S.I.S_ at _Schuylkill F.C.I_
Mailing address: _P.O. Box 759 MENERSville PA 17954_

(3) Name of third defendant: _C.O. BORD_
Employed as _C.O._ at _F.CI Schuylkill_
Mailing address: _P.O. Box 759 MENERSville PA 17954_

(List any additional defendants, their employment, and addresses on extra sheets if necessary)

## IV.   STATEMENT OF CLAIM

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets if necessary.)

1.   _C.O. BORD wrote False INcident Reports. DHO Bittenbender Lied on the 113_
_DHO Report, Including but not limited too, S# 1. That Delay was based on AUSA yet FOIA Attatchment_
_shows otherwise. Bittenbender also changed the inmate # in the DHO report, see attatchments_
_S.I.S. Tech tomlinson said he tested the alleged drugs, yet again that is a Lie, see attatchments_
_There was also only a 5D midure investigation._ please see pages 4-5- and 6

2

2. The second incident S.I.S Tech Tomlinson wrote a false report leaving out all exculptory evidence and facts. D.H.O. Bitterbeoer after viewing the exculptory evidence left it out of the hearing, did not consider my witness, Lied about which box the phones were found in and many other things. Again There was a 3 min investigation. Please see pages 4-5 and 6

3. Please see attachments as all my claims are Facts that are all proven. The F.O.I.A attatchents all clearly show how STAFF manipulated facts and outright Lied.

## V.   RELIEF

(State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.)

1. I would Like STAFF to be Fired and held responible for their actions.

2. I would Like damages since I could not speak, see, or email, or have any contact with my elderly parents, friends, and family for approx 3 years due to these False charges that were eventually expunged (after spending 40,000.00 Dollars of Lawyers).

3. Please see attatched exhibits and motion.

JOHN VENIZELOS #80556-053          )
F.C.I. Estill P.O. Box 699         )
Estill, S.C. 29918                 )
                                   )
vs.                                )
                                   )
C.O. BORD, S.I.S. TECH. TOMLINSON, )
D.H.O. BITTENBENDER, UNKNOWN LT'S, )
UNKNOWN CAPTAIN; UNKNOWN WARDEN.    )

**1ST INCIDENT**

1. On June 8th Co.O. Bord wrote me a 113 (Ex 16-1) Incident Report. He left
   out the fact that the label were the suboxon was found was another inmate.
   He also initially states the envelope was mixed among "numerous blank
   envelopes". Then switched the facts when he re-wrote the report stating now
   the envelope was in my locker mixed with personal mail and legal work. He
   did this even though he did not find  the envelope. It was officer Zigarski
   who found it. The re-written report is Ex 16-2.

2. The F.B.I. declined to prosecute on 6-10-17, see Ex 16-2. Yet D.H.O
   Bittenbender claimed in his DHO report (Ex. 16-4) that the 61 day delay was
   due to AUSA refferal. The first of many blatent lies.

3. On 6-17-16 I saw D.H.O. Bittenbender. I was shown the envelope and pointed
   out to Reg. # on the envelope was not mine. The D.H.O. postponed the hearing.

4. On 7-19-16 I had another D.H.O. hearing. This time Bittenbender told me that
   the inmate # on the envelope was fake as he stated in his D.H.O. report.
   Ex 16-4 page 3. He then postponed the hearing again. At a later date I was
   able to get a copy of the picture of the envelope Ex. 16-5 which shows the
   # to be 31869-160 (an inmate who was in FCI Schuylkill and my cellie). Yet
   in his report Bittenbender states the number was 31889-160. I find it impossible
   to believe after a S.I.S. investigation, U.D.C. hearing, 3 D.H.O. hearings, that
   nobody could determine the # clearly visible on the label were drugs were
   found belonged to another inmate.

5. S.I.S TECH Tomlinson stated he tested the alleged suboxon on June 10th, 2016
   Ex 16-6. This is not possible since the evidence was put in the lock box
   safe on June 8th, see Ex 16-7 and never checked out by anyone after that date.

6. The LT only did a 5 min investigation, a clear rubber stamp job. See Ex 16-8 & were investigation starts at 1:25pm and ends at 1:30pm.   16-8

7. Both the warden and captain reviewed those proceedings and alarmingly found nothing wrong. See Ex 16-9. ex 16-9

8. On 8-1-16 I went for my 3rd D.H.O. hearing and lost 201 good days, 2 years visit, 1 year phone after D.H.O. Bittenbender found me guilty.

9. On approx 8-28-17 the incident report was expunged after I won my BP-11 and was given a rehearing.

10. I exhausted all remedies and the Incident Report was expunged. - ex 4

**2ND INCIDENT**

1. S.I.S TECH Tomlinson hid evidence and left out all exculpatory evidence in his NOTICE OF CHARGES. He also ignored Herlihy's plead that he was responsible. See Ex 1 thru 15.

2. The LT only did a 3min investigation and never interviewed my witness. See Ex 1 thru 15.

3. D.H.O. Bittenbender lied in the hearing and DHO report saying the contraband was found in a box with my fathers name. See Ex 1 thru 15.

4. D.H.O. Bittenbender with held evidence even though I requested to view it at my hearing. See Ex 1 thru 15.

5. D.H.O. Bittenbender did not consider my witness's statement or testimony. Ex 1 thru 15.

6. D.H.O Bittenbender ignored my statement. Ex 1 thru 15.

The exhibits attached will show all of the above statements to be facts.

All remedies for 108A/197 were exhausted via 2241 filed in the N.D.W.V. civil case #3:18-CV-00119-GMG-RWT. This case was decided in my favor and both SHOTS expunged.

I am seeking damages for being placed in S.H.U. for 7 months, for being shipped to med instead of low, and most importantly the fact I could not visit with, speak to or communicate at all with my elderly parents and other family. I though everyday to my self that God forbid I may never get to see or hear their

**5**

voice again. This went on for 3 years. I suffered heart burn, headaches, shingles, and obviously stress everyday.

I also hope the staff involved are fired or at least repremanded. Nobody in prison should be cut off from there support and family. It serves as the opposite of rehabilitation. We prisioners need to re-enter society in a productive way.


Pro se,

JOHN VENIZELOS

6

Case 8:19-cv-01219-CCC   Document 1   Filed 07/18/19   Page 7 of 60



BP-S308.052   ADMINISTRATIVE DETENTION ORDER   CDFRM
MAY 94
U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

                                                          FCI Schuylkill
                                                          Institution

                                    Date/Time:    June 08, 2016, @ 11:25am

TO:    Special Housing Unit Officer

FROM:  R. Raup, Lieutenant      , (Name/Title)

SUBJECT:  Placement of Venizelos, John  Reg. No. 80556-053  in Administrative Detention

_____ (a) Is pending a hearing for a violation of Bureau regulations;
_____ (b) Is pending investigation of a violation of Bureau regulations;
_____ (c) Is pending investigation or trial for a criminal act;
_____ (d) Is to be admitted to Administrative Detention

        _____(1) Since the inmate has requested admission for protection;

    I hereby request placement in Administrative Detention for my own protection.

Inmate Signature/Register No:
Staff Witness Printed Name Signature:

        _____(2)    Since a serious threat exists to individual's safety as perceived by staff,
                      although person has not requested admission; referral of the necessary
                      information will be forwarded to the UDC/DHO for appropriate hearing.

_____ (e) Is pending transfer or is in holdover status during transfer.
 XX  (f) Is pending classification; or S.I.S. investigation.
_____ (g) Is terminating confinement in Disciplinary Segregation and has been ordered into
          Administrative Detention by the Warden's designee.

It is this officer's decision based on all the circumstances that the above named inmate's
continued presence in the general population poses a serious threat to life, property, self, staff,
other inmates, or to the security or orderly running of the institution because. You are being
placed in Administrative Detention pending an SIS Investigation.  Therefore, the above named inmate
is to be placed in Administrative Detention until further notice. The inmate received a copy of
this Order on (date/time)  June 08, 2016 @ 12:45am.
Staff Witness Signature/Printed Name  R. Schreffler/              Date 06-08-2016

*In the case of DHO action, reference to that order is sufficient. In other cases, the officer will
make an independent review and decision, which is documented here.

Record Copy - Inmate Concerned (not necessary if placement is a result of holdover status); Copy -
Captain; Copy - Unit Manager; Copy - Operation Supervisor - Administrative Detention Unit; Copy -
Central File

(This form may be replicated via WP)                    Replaces BP-308(52) of JAN 88



**ex 2**



**U.S. Department of Justice**
Federal Bureau of Prisons

---

FCI Schuylkill, Minersville, PA

June 15, 2016

MEMORANDUM FOR: R.A. Perdue, WARDEN

FROM: R. Raup, SIS Lieutenant

SUBJECT: Visiting Restriction

On June 7, 2016, inmate Venizelos, John, Roger, Reg. No. 80556-053, was placed in the Special Housing Unit for an S.I.S. investigation. It is believed Venizelos along with other inmates were attempting to introduce cell phones into FCI Schuylkill through the mail. Based on this information, the S.I.S. Office recommends Venizelos' visiting privileges be suspended until the completion of the investigation. This suspension does not preclude the inmate from receiving attorney visits.

_____ **Approved**          _____ **Denied**
R.A. Perdue, Warden                                  R.A. Perdue, Warden

cc:   Unit 3 Team

      FCI Visiting Room

      FCI Front Lobby

      Control Center

      Special Housing Unit

      Inmate Venizelos, John, Reg. No. 80556-053



**U.S. DEPARTMENT OF JUSTICE** 2900888     2x 3     **FEDERAL BUREAU OF PRISONS**

---

### Part I - Incident Report

**1. Institution:** FCI Schuylkill

| 2. Inmate's Name | 3. Register Number | 4. Date of Incident | 5. Time |
|---|---|---|---|
| Venizelos, John | 80556-053 | June 7, 2016 | 9:00 10:00 a.m. |

| 6. Place of Incident | 7. Assignment | 8. Unit |
|---|---|---|
| FCI Schuylkill | Adm Det | 3B/CB (SHU) |

| 9. Incident | 10. Prohibited Act Code(s) |
|---|---|
| Introduction of hazardous tool/cellphone(Attempt) Use of the phone for an illegal purpose | 108(A) 197 |

**11. Description Of Incident** (Date: **9/28/16** Time: **9:00 a.m.** Staff become aware of incident) On September 28, 2016, SIS Case SCH-16-0095, was completed. It was concluded on June 7, 2016, inmates Herlihy, Michael, Reg. No. 20813-171, and Venizelos, John, Reg. No. 80556-053, conspired and attempted to carry out a sophisticated scheme to introduce cellphones and other contraband in to FCI Schuylkill. They arranged to have contraband placed into a package that was being "returned to sender" that was originally mail out by Herlihy. Specifically, Venizelos was responsible for obtaining the cellphones and other contraband and having it delivered to Herlihy's contact on the street. The cellphones and other contraband would then be placed into a package that was then marked "return to sender." The package would then be delivered to the US post office in hopes Herlihy would receive the package and remove the contraband and distribute the contraband to various inmates to include Venizelos.

| 12. Typed Name/Signature of Reporting Employee | 13. Date And Time |
|---|---|
| J. Tomlinson/ | 9-28-16 @ 10:30 a.m. |

| 14. Incident Report Delivered To Above Inmate By (Type Name/Signature) | 15. Date Incident Report Delivered | 16. time Incident Report Delivered |
|---|---|---|
| J Fouca 4 | 9-28-16 | 1:20 pm |

---

### Part II - Committee Action

**17. Comments of Inmate to Committee Regarding Above Incident**

See attached statement

**18. A. It Is The Finding Of The Committee That You:**

_____ Committed The Following Prohibited Act.
_____ Did Not Commit A Prohibited Act.
_____ Committed Prohibited Act Code (s)_____

**B.** ✓ The Committee is referring the Charge(s) to the DHO for further Hearing.

**C.** _ The Committee advised the inmate of Its finding and of the right to file An appeal within 20 calendar days.

**19. Comments Decision is Based on Specific Evidence as Follows:**

Greater sanctions are warranted than are available to the UDC

**20. Committee action and/or recommendation if referred to DHO** (Contingent upon DHO finding inmate committed prohibited act)

If found guilty, the UDC recommends appropriate sanction

**21. Date And Time Of Action** 10/4/16 2:10 pm (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings)

| C Brill C.B. | B. Haupt/B. |  |
|---|---|---|
| Chairman (Typed) Name/signature) | Member (Typed Name) | Member (Typed Name) |

---

**INSTRUCTIONS:** All items outside heavy rule are for staff use only. Begin entries with the number 1 and work up. Entries not completed will be void by staff.

**DISTRIBUTE:** ORIGINAL-Central File record; COPY-1-DHO; COPY-2-Inmate After UDC Action; COPY-3-Inmate within 24 hours of Part I Preparation.

PDF

John Venizelos Russcuss

ex 3-2

## U.D.C. Statement

Per policy 5270.09 section 11 is supposed to contain "All known Facts" and any "evidence handled". Nowhere in Section 11 does it make reference to any evidence as to how S.I.S. TOMLINSON Drew this conclusion I commited 108A. In this regard I ask to Review the evidence so I can propely prepare my defense.

_O. TOMLINSON states he became aware of the allegen incident on 9-28-16. This is incorrect. S.I.S. Became aware of this allegen incident in June 2016. Everything in section 11 was also submitted to he F.B.I in June 2016 (see F.B.I packet). The F.B.I declinen to prosecute on 9-13-16. I did not receive my incident report until 9-28-16 In this way staff violated policy P.S.5270.09 and violated my rights.

I would like to call Michael Herilhy 20815-171 as a witness. He can testify to the fact I did not help in plan, aid, or attempt to introduce anything into Schuylkill F.C.I. I also did not supply him with any of the contraband.



D.H.O. STATEMENT PAGE 1 oF 2    ∞ ex 4

## STATEMENT OF JOHN VENIZELOS

This statement is offered with regard to the allegation that I attempted to introduce contraband into the institution.

On June 7, 2016, two other inmates were placed in SHU in connection with the contraband allegation. On June 8, I was placed in the SHU with respect to the allegation. On June 16, I was informed that the matter had been referred for prosecution. On September 13, I was informed that prosecution was declined. However, not until 9-28-2016 did I receive an incident report. In this way, staff violated policy. P.S. 5270.09 ("ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident"); *id.* (investigation begins "[a]fter you receive an incident report"). Given the lack of any legitimate institutional need for the delay, this effort to gin up a charge also clearly violates my rights.

As I understand it, the basis for the charge is staff's discovery of a box inside a larger box received at the institution on or about June 7. Specifically, reportedly affixed to the smaller box is a shipping label that (a) lists my father as the sender and a party in Philadelphia unknown to me as the recipient and (b) shows that shipment occurred in February 2016. Inside that smaller box (inside the larger box) staff reportedly found three cellular phones and an MP3 player.

Among the things about which the BOP has no known direct evidence are: (a) what was contained in the smaller box when it was shipped in February; (b) who the addressee on the smaller box label is; (c) who received the box in February; (d) where the box was stored between February and June; (e) who possessed/had access to the box between February and June; (f) when the phones and/or MP3 player were purchased, as well as where and by whom; (g) to the extent there is data on the MP3 played (for example, music), who placed it there; (h) who placed the phones and/or MP3 player into the box, or when that individual(s) did so; (i) who placed the smaller box inside the larger box, or when that individual(s) did so; (j) who received the larger box when it was sent from the institution; or (k) who returned the larger box to the institution.

In the absence of any direct evidence connecting me to the either the smaller box being used for the items in the larger box or to the items the institution discovered in the smaller box, the instant allegation represents pure supposition. Experience suggests that staff will attempt to justify the charge by claiming it is supported by "the greater weight of the evidence," namely the adverse inferences staff seeks to draw. However, as the foregoing demonstrates, such a claim is without merit. Indeed, it is belied by the fact that numerous, germane questions exist more than three months after the institution received the larger box and initiated an investigation (that presumably included MDC Philadelphia SIS staff given their proximity to the addresses/addressees on the box labels).

In addition to the above, it is particularly troubling that I have received an incident report while one of the other two people placed in SHU in connection with the matter did not. Specifically, that individual reportedly made the piece of art contained in the larger box and facilitated its being shipped to Philadelphia, only to be 'returned to sender.' It is unwarrantable that someone who played a role in creating the principal vehicle by which the contraband items were shipped into the institution is not charged but I am.

I request the opportunity to review the evidence, including the boxes and contraband items, and ask that all evidence be preserved in the event of litigation.

I WOULD ALSO lIKE TO CALL ▬▬▬▬▬▬▬ AS A WITNESS TO THE FACT I DID NOT SUPPly him WITH ANY CONTRABAND, NOR DID I help, make plans, aID or aberT him IN ANY WAY WITH

John Venizelos 80556-053    Q Ex 4-2

D.H.O. STATEMENT page 2 of 2

IT is impossible for ANyone To hAve ANy FActs/evidence thAt I committed ANy of the following Actions becAuse I simply DID NOT.

1. I DID NOT ArrANGe, AttempT, or mAke plAns For ANything To be shipped INTo Schuylkill F.C.I.

2. I DID NOT obtAin OR Direct ANyone To obtAIN ANy cell phones or other CONTRABAND

3. I DID NOT Ask OR Direct ANyone To seND ANything To "CONTACT"

4. IF I wAs NOT put in the S.H.U. on JuNe 7th becAuse of these FAlse AllegATions I would hAve been TrANsferred To A LOW securiTy prison ANy DAy. As I wAs put IN For TrANsfer on JuNe 1st 2016 By my cAse MANAGer MR. [REDACTED] Therefore iT would be impossible For me To hAve been the recepient of ANy contrAbAND.

Furthermore, I had NO knowledge of ANy of [REDACTED] plANs. I cerTAINly DID NOT help, AID, or mAke plANs with him IN ANywAy To INTroDuce ANything INTo Schuylkill F.C.I.

Questions For WITNESS [REDACTED]

1. DID John Venizelos kNOw of ANy plANs To INTroDuce contrABAND?
2. DID John Venizelos supply you with ANy of the contrABAND?
3. DID John Venizelos help, mAke plANs, or AID IN The ATtempt To INTroDuce contrABAND?
 Were you plANNing To give John Venizelos ANy contrABAND?
5. When [REDACTED] Friend moved INTo the AdDress or The Box sent From INSTITuTION?

ITs IS MY UNDerstANDiNG thAt [REDACTED] "CONTACT" DID NOT move INTo thAt AdDress uNTil END of MArch, 2016 As reflecTed oN his visiTing LIST chANGes.



Discipline Hearing Officer Report                                         BP-A0304 CDFRM AUG 11
U.S. Department Of Justice                           **QX 5**                    Federal Bureau of Prisons

| INSTITUTION | FCI SCHUYLKILL | | INCIDENT REPORT NUMBER | | 2900888 |
|---|---|---|---|---|---|
| INMATE NAME | VENIZELOS, John . | | REG NO | 80556-053 | UNIT | 3B |
| DATE OF INCIDENT | 06/07/16 | | DATE OF INCIDENT REPORT | | 09/28/2016 |

| OFFENSE CODE(S) | 108(A)/197 |
|---|---|
| SUMMARY OF CHARGE(S) | INTRODUCTION OF HAZARDOUS TOOLS (Attempt)/ USE OF PHONE FOR ILLEGAL PURPOSE |

## I. NOTICE OF CHARGE(S)

A. Advanced written notice of charge(s) (copy of Incident Report) was given to inmate on (date) 09/28/16          (time)          1:20PM          (by)          J. FOURA

B. The DHO Hearing was held on (date)11OCT16                    (time)1110 hrs

C. The inmate was advised of his rights before the DHO by (staff member):
C. BRILL                    on(date)          10/04/216          and a copy
of the advisement of rights form is attached.

## II. STAFF REPRESENTATIVE

| A. Inmate waived right to staff representative | | Yes | | x | No | |
|---|---|---|---|---|---|---|
| B. Inmate requested staff representative and | | | appeared | | | |

C. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that:

| D. Staff Representative appointed: | | | |
|---|---|---|---|
| E. Staff Representative Statement: | | | appeared |

## III. PRESENTATION OF EVIDENCE

| A. Admits | | Denies | | Neither | x |
|---|---|---|---|---|---|

B. Summary of inmate statement:

At the onset of this hearing, this inmate was advised of his Rights before the DHO, indicated he understood them and chose to provide the following statement: VENIZELOS stated, "I didn't ask for the phones and I don't know how my dad was involved; I only know HERILY from working out." VENIZELOS declined to make any further verbal statement. VENIZELOS provided a written statement. In summary he denies any responsibility in the introduction of contraband nor any knowledge of any contraband being introduced.

No procedural issues were cited and no documentary evidence was provided for consideration. The DHO noted a delay in the discipline process. This was due to the report being referred to the FBI/AUSA for criminal prosecution. The agency referred the report back for disciplinary processing. The DHO did not believe this delay infringed upon the inmate's ability to defend himself against the charged behavior, nor was it addressed it as an issue.

| C. Witness(es): | | | | |
|---|---|---|---|---|
| 1. The inmate requested witness(es). | | Yes | x | No | |

2. The following persons were called as witnesses at this hearing and appeared. (Include each witnesses' name, title, reg number and statement as appropriate.) Inmate VENIZELOS requested Inmate HERLIHY #20813-171 as a witness to present testimony on his behalf. HERLIHY states: *I was responsible for the contraband to be sent in; it was through my friend Rob Taylor. I never heard of Desmond Stewart.* HERLIHY provided a written statement. In summary the hand written statement states VENIZELOS has no knowledge of the introduction of contraband.

Page 1 of 4

VENIZELOS' father's name (George Venizelos), address and USPS shipping information was on the shipping label of the box inside the return to sender box which contained the Samsung Galaxy5 cellphone along with other cellphone and charging components.

| | |
|---|---|
| 3. A summary of the testimony of each witness is attached: | |
| 4. The following persons requested were not called for the reason(s) given: | |

| | Yes | | No | | N/A | X |
|---|---|---|---|---|---|---|
| 5. Unavailable witnesses were requested to submit written statements and those statements received were considered. | | | | | | |

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents:
Photographs taken by Lt. Malakoski dated 6/7/16
Telephone Transcript from VENIZELOS to George Venizelos on 2/25/16
Email Transcript from George Venizelos to VENIZELOS dated 2/24/16

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been /confidential informant(s) have been determined to be reliable because:

N/A

| | IV. FINDINGS OF THE DHO |
|---|---|
| xx | A. The act(s) was/were committed as charged. |
| | B. The following act(s) was/were committed: |
| | C. No prohibited act(s) was/were committed: |
| | D. Expunge according to Inmate Discipline PS 5270.09 |

V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.)

During this discipline hearing, the following information was evidentiary and documented by the DHO in his findings. VENIZELOS, John involvement in the incident, as noted in Section 11 of Incident Report 2900888, as provided by J. Tomlinson, SIS TECH, was reviewed. Paraphrased, J. Tomlinson writes:
On September 28, 2016, SIS Case SCH-16-0095, was completed. It was concluded on June 7, 2016, inmates Herlihy, Michael, Reg. No. 20813-171, and Venizelos, John, Reg. No. 80556-053, conspired and attempted to carry out a sophisticated scheme to introduce cellphones and other contraband in to FCI Schuylkill. They arranged to have contraband placed into a package that was being "returned to sender" that was originally mail out by Herlihy. Specifically, Venizelos was responsible for obtaining the cellphones and other contraband and having it delivered to Herlihy's contact on the street. The cellphones and other contraband would then be placed into a package that was then marked "return to sender." The package would then be delivered to the US post office in hopes Herlihy would receive the package and remove the contraband and distribute the contraband to various inmates to include Venizelos.

Inculpatory evidence in the form of a telephone transcript from Inmate VENIZELOS to George Venizelos (Father) dated 2/25/16 corroborated the evidence cited in this report. The telephone call made by VENIZELOS to his father indicates his father had sent a package yesterday (2/24/16) and Inmate VENIZELOS acknowledges by stating he had seen as referring to the email sent the day prior (2/24/16) by George Venizelos. VENIZELOS withholds any additional comment as to not bring any attention to the phone call. In addition, the email dated 2/24/16 from George Venizelos corroborates this statement.

Inculpatory evidence in the form of a photograph taken by Lt. Matakosky dated 6/7/16 corroborated the evidence cited in this report. The photograph clearly depicts a smaller box labeled George Venizelos (sender) to Desmond Stewart inside the larger "Return to Sender" box which housed a ceramic tree. The USPS shipping label is post marked 2/24/16 (Coincides with date of conversation of package being sent). The receiving address on the shipping label coincides with the same address as the "return to sender box" was being shipped to; only having a different name (Rob Taylor). The smaller box sent by George Venizelos was sent to a receiver name of Desmond Stewart. The box sent by George Venizelos contained cellphones and other cellphone components (Chargers, MP3 player, earphones, SD cards).

Inculpatory evidence in the form of the SIS investigation Report from Officer Tomlinson dated 9/27/16 corroborated the evidence cited in this report. The report clearly outlines the involvement of Inmates VENIZELOS and HERLIHY in the attempted introduction of hazardous contraband.

The DHO believed the information provided by the staff member involved in this case, as they derived no known benefit by providing false information. The DHO finds the charges of codes 108A and 197 to be supported in this case based upon the greater weight of evidence cited in this report. The DHO did not consider Inmate HERLIHY's witness testimony due to the generality and rehearsed statement he provided at the DHO hearing. In addition; HERLIHY could not provide specific information as to why Inmate VENIZELOS' father was involved or how the package his father had sent to his contact was received along with the sealed contents of a cellphone inside the box had appeared. VENIZELOS' involvement of introduction was apparent through his telephone call placed to his father. The cellular products introduced into the institution were an attempt to place those items in the hands of inmates. VENIZELOS used his phone to confirm the shipping of those items on the date they were shipped from his father to the outside contact of Inmate HERLIHY.

Upon questioning by the DHO, VENIZELOS #80556-053 denied the charge. He elaborated upon his plea by stating, he had no knowledge of the introduction. After the consideration of evidence documented above, the DHO has drawn the conclusion the greater weight of the evidence / some facts, listed in the paragraphs above, support(s) the finding, Venizelos #80556-053 committed the prohibited act(s) of possessing/introduction of a hazardous tool (Attempt), phone abuse, Code(s) 108A/197 on 06/07/16, at or about 9:00am, in mailroom, at FCI Schuylkill.

**VI. SANCTION(S) OR ACTION(S) IMPOSED:**

Code 108A
Disciplinary Segregation - 30 Days
Disallowance of Good Conduct Time - 41 Days
Comp 010 Law P
Forfeiture of Non Vested Good Conduct Time - 162 Days
Comp 010 Law P
Loss of Privileges (Phone) - 3 year
Loss of Privileges (Visit) - 3 year
Loss of Privileges (EMAIL) - 3 year
Monetary Fine - $287.00 Dollars

CODE 197
Disciplinary Segregation - 30 Days
Disallowance of Good Conduct Time - 41 Days
Comp 010 Law P
Forfeiture of Non Vested Good Conduct Time - 162 Days
Comp 010 Law P
Loss of Privileges (Phone) - 3 year
Loss of Privileges (Visit) - 3 year
Loss of Privileges (EMAIL) - 3 year

*All sanctions are served consecutive to like sanctions previously imposed.

**VII. REASON FOR SANCTION OR ACTION TAKEN**

VENIZELOS' involvement in the attempt to introduce hazardous contraband (cellphones) into the institution threatened the orderly running of the correctional facility. For inmates to introduce these types of items, not known to be provided to them through institutional channels indicates defiance and refusal to follow established and known policy. Limits are placed on inmate property to persuade them not to possess unnecessary or potentially dangerous items. These can be potentially be used to facilitate escape, contraband introduction and/or harm to another through unrestricted access to the general public. VENIZELOS' use of his telephone privileges detracted from the intent of the Federal Bureau of Prison's telephone policy. His use of the telephone to confirm the shipment of and tracking of the contraband (cellphones) bypassed staff's ability to effectively monitor his call. Accordingly, Disciplinary Segregation, the Disallowance of Good Conduct Time and the Forfeiture of Non Vested Good Conduct Time are sanctioned to punish VENIZELOS for his behavior while the Loss of Privileges (Phone, Visit, Email) and a Monetary Fine are sanctioned in an effort to deter him from it in the future. The DHO finds the charge for codes 108A and 197 to warrant the Forfeiture of Non Vested Good Conduct Time in addition to the Disallowance of Good Conduct Time based on the offense being of a highly aggravated offense which greatly jeopardizes the safety of staff and inmates.

**VIII. APPEAL RIGHTS:** _X_ The inmate has been advised of the findings, specific evidence relied on, sanction(s)/ action(s) and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate.

**IX. DISCIPLINE HEARING OFFICER**

| Printed Name of DHO | Signature of DHO | Date |
|---|---|---|
| K. Bittenbender | | 6-24-16 |
| Report delivered to | Signature: | Date: 6-24-16 |

Prescribed by P5270          Replaces BP-304(52) of JAN 88



CENTRAL OFFICE ADMINISTRATIVE REMEDY APPEAL

U.S. Dep...                                    ...Regional Administrative Remedy Appeal #. 50

Federal Bureau of Prisons

ex 6

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: _____   _____   _____   _____
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL**

_____ DATE                          _____ SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____ DATE                          _____ REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE                 CASE NUMBER: _____

**Part C - RECEIPT**

                                              CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT _____

_____ DATE                          _____ SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN 3                                                                BP-230(13)

VENIZELOS, JOHN REG. NO. 80556-053                REGIONAL OFFICE ADMINISTRATIVE REMEDY APPEAL (BP-10)

To begin, through Section III-A of the report, the DHO offers that I neither admitted nor denied the allegations. However, as Section III-B and V make clear, I denied the charges. Similarly, through Section III-B, the DHO asserts that "[n]o procedural issues were cited." However, through a written statement submitted to the DHO, which is attached hereto (Ex. A) and incorporated herein by reference, I do challenge the delay between when I was placed in SHU (6/8/16) and the receipt of the incident report (9/28/16), particularly where the matter was referred for prosecution on 6/16/16 (8 days after I was placed in SHU) and prosecution was declined on or before 9/13/16 (14 days before the incident report). *See* Rpt. § III-B (acknowledging receipt of written statement).

Turning to the findings, in respects the DHO report corroborates my written statement, which derives in large measure from what staff advised regarding the allegations subsequent to my being placed in SHU: on 2/24/16 my father mailed a small box to a Desmond Stewart; at a later, unspecified point (presumably known to staff) Inmate Herlihy mailed a larger box to Rob Taylor, who is on his approved visiting list, at the same address; the larger box, marked "Return To Sender," was received back at Schuylkill on or about 6/7/16; and contained within the larger box was the smaller box within which were found three cellular phones and an MP3 player. From this, the DHO, following SIS's lead, deduces that I conspired with Herlihy to introduce contraband into the institution notwithstanding that Herlihy made clear, among other things, that I had "no knowledge of the introduction of contraband."

Notable about the DHO report is the failure to address the various issues raised through my statement. For one, while there is no issue I communicated with my father by e-mail on 2/24/16 and by phone on 2/25/16, there is no evidence or indication of our *ever* discussing his purchasing and/or shipping contraband items. *But see* Rpt. § V (claiming, without evidence, that the call was intended "to confirm the shipping of those [contraband] items"). Moreover, there remains no evidence as to what was contained in the box sent to Desmond Stewart, let alone that whatever was in the box is what was in the box once placed inside the larger box and shipped. Similarly, nowhere in the record (*see* Sec. III-D and –E) is there is a scintilla of direct evidence that Herlihy and I communicated at all during the relevant period (*i.e.*, between 2/25/16 and 6/7/16), let alone that we conspired in the manner alleged. *But see* Rpt. § V ("conspired and attempted to carry out a sophisticated scheme"); *id.* ("arranged" with Herlihy "to have contraband placed into a package that was being 'returned to sender' that was originally mail out by Herlihy"). In sum, there is no basis for the finding that I "was responsible for obtaining the cellphones and other contraband and having it delivered to Herlihy's contact on the street," particularly where there is no evidence Herlihy knew or ever communicated with Desmond. Rpt. § V; *but see id.* (smaller box shipped "to the outside contact of Inmate HERLIHY").

The deficiency of the pure supposition that underlies the DHO's findings is reflected not only in its failure to address the myriad pertinent considerations presented to it, but also in its wanting investigation. Notably missing from the report is mention of the address to which the Stewart and Taylor boxes were sent: 3601 North 5th Street in Philadelphia. Google Maps, a Web site to which the DHO presumably has access, shows the location is a rooming house, as evidenced by "Rooms for Rent" on the door under the number "3601." Ex. B. In the absence of any evidence that Stewart and Taylor shared or even rented a room at the location during the relevant period or otherwise knew or communicated with one another, it is unclear how the DHO links them to the boxes and the claimed conspiracy (for example, Stewart receiving the smaller box (with whatever it contained) and giving it to Taylor (assuming he is the one who placed the smaller box inside the larger).

Significantly, the DHO did not consider Herlihy's testimony. Rpt. § V. In part, this was because Herlihy "could not provide specific information as to why [my] father was involved or how the package [my] father had sent to his contact was received along with the sealed contents of a cellphone inside the box had appeared." *Id.* The DHO's stated position evinces its bias, namely its predetermination that my father "was involved" and that as a member of the claimed conspiracy Herlihy should have known that. As noted above, aside from my father shipping a box, whose contents remain unknown, to a rooming house in Philadelphia, there is nothing that connects him to the claimed conspiracy. Where the DHO cannot legitimately claim knowledge of what was in that smaller box when shipped, on 2/24/16, refusing to give any consideration to Herlihy's due to the same inability further demonstrates the arbitrary and capricious nature of these proceedings, which relies on guesswork rather than evidence.

The implications of the DHO's unsubstantiated findings are reflected in the sanctions imposed. Although as the DHO makes clear its belief that the phone call between me and my father on 2/25/16 (the day *after* the small box was shipped) is part of the same alleged scheme as the attempted introduction of contraband more than three months later, it imposes essentially the same sanctions as to each charged violation consecutively, resulting in a total effective sanction of 60 days' segregation (despite my having served more than 120 days in SHU before charges were brought); disallowance of 82 days' GCT; forfeiture of 324 days' non-vested GCT; and six years' each loss of visiting, telephone and e-mail privileges. With a current projected release date of 3/10/2023, these sanctions effectively mean I cannot see or speak with my family, including my elderly parents, for the balance of my prison term. Even if concurrent, the sanctions imposed are not properly correlated to any legitimate penalogical need.



## STATEMENT OF JOHN VENIZELOS

This statement is offered with regard to the allegation that I attempted to introduce contraband into the institution.

On June 7, 2016, two other inmates were placed in SHU in connection with the contraband allegation. On June 8, I was placed in the SHU with respect to the allegation. On June 16, I was informed that the matter had been referred for prosecution. On September 13, I was informed that prosecution was declined. However, not until _____ did I receive an incident report. In this way, staff violated policy. P.S. 5270.09 ("ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident"); *id.* (investigation begins "[a]fter you receive an incident report"). Given the lack of any legitimate institutional need for the delay, this effort to gin up a charge also clearly violates my rights.

As I understand it, the basis for the charge is staff's discovery of a box inside a larger box received at the institution on or about June 7. Specifically, reportedly affixed to the smaller box is a shipping label that (a) lists my father as the sender and a party in Philadelphia unknown to me as the recipient and (b) shows that shipment occurred in February 2016. Inside that smaller box (inside the larger box) staff reportedly found three cellular phones and an MP3 player.

Among the things about which the BOP has no known direct evidence are: (a) what was contained in the smaller box when it was shipped in February; (b) who the addressee on the smaller box label is; (c) who received the box in February; (d) where the box was stored between February and June; (e) who possessed/had access to the box between February and June; (f) when the phones and/or MP3 player were purchased, as well as where and by whom; (g) to the extent there is data on the MP3 played (for example, music), who placed it there; (h) who placed the phones and/or MP3 player into the box, or when that individual(s) did so; (i) who placed the smaller box inside the larger box, or when that individual(s) did so; (j) who received the larger box when it was sent from the institution; or (k) who returned the larger box to the institution.

In the absence of any direct evidence connecting me to the either the smaller box being used for the items in the larger box or to the items the institution discovered in the smaller box, the instant allegation represents pure supposition. Experience suggests that staff will attempt to justify the charge by claiming it is supported by "the greater weight of the evidence," namely the adverse inferences staff seeks to draw. However, as the foregoing demonstrates, such a claim is without merit. Indeed, it is belied by the fact that numerous, germane questions exist more than three months after the institution received the larger box and initiated an investigation (that presumably included MDC Philadelphia SIS staff given their proximity to the addresses/addressees on the box labels).

In addition to the above, it is particularly troubling that I have received an incident report while one of the other two people placed in SHU in connection with the matter did not. Specifically, that individual reportedly made the piece of art contained in the larger box and facilitated its being shipped to Philadelphia, only to be 'returned to sender.' It is unwarrantable that someone who played a role in creating the principal vehicle by which the contraband items were shipped into the institution is not charged but I am.

I request the opportunity to review the evidence, including the boxes and contraband items, and ask that all evidence be preserved in the event of litigation.

6-4





Ex 7

VENIZELOS, John
Reg. No. 80556-053
Appeal No. 882420-R2
Page One

## Part B - Response

You appeal the October 11, 2016, decision of the Discipline
Hearing Officer (DHO) at FCI Schuylkill finding you committed
the prohibited acts of Possession of a Hazardous Tool
(Attempted), Code 108A, and Use of Telephone for an Illegal
Purpose, Code 197, Incident Report No. 2900888.  You deny
committing the prohibited act, and contend there was
insufficient evidence to find you committed this prohibited act.
You also contend you were not delivered a copy of the incident
report within required time frames. You request this incident be
expunged.

The DHO reasonably determined you committed the prohibited act
based on the following.  On September 28, 2016 an SIS
investigation concluded that on June 7, 2016 you attempted to
introduce cellphone into FCI Schuylkill.  Specifically, you
instructed your father to send cell phones to a predetermined
address in Philadelphia.  The receiving party at the address
then placed the cell phones into a box received from another
inmate at FCI Schuylkill, and returned the box to the other
inmate using "return to sender" through the U.S. Postal Service.
When the cell phones were discovered by staff at FCI Schuylkill
in the box marked "return to sender" the cell phones were
located in packaging containing your father's name and address.
Transcripts from a telephone conversation between you and your
father confirm your involvement, as he indicated to you in the
conversation that the cell phones were sent the day prior to the
conversation.  Evidence shows the cell phones were mailed by
your father on February 24, 2016, and your conversation with him
occurred on February 25, 2016.  In addition to the written
report the DHO also relied upon the SIS Investigative Report,
photographs of the packaging and items mentioned in section 11
of the incident report, as well as transcripts of the telephone
conversation between you and your father.

Your contention the DHO relied upon insufficient evidence to
support his finding is without merit.  The DHO thoroughly
details the evidence relied upon in Section V of his report.
The record reflects that the DHO afforded you the opportunity to
present evidence and provide a statement in your defense.

(Continued on Page Two)

7

**VENIZELOS, John**
Reg. No. 80556-053
Appeal No. 882420-R2
Page Two

---

## Part B - Response

The DHO considered your statements, and the statement of your witness, prior to rendering a decision. The DHO found the greater weight of evidence supported the staff member's account of the incident.

The record in this case reflects substantial compliance with Program Statement 5270.09, Inmate Discipline Program. The decision of the DHO was based upon the greater weight of the evidence, and the sanctions imposed were consistent with the severity level of the prohibited act. The sanctions imposed, disallowance of 41 days of good conduct time, forfeiture of 162 days of non-vested good conduct time, 30 days of disciplinary segregation, a $287.00 fine and loss of three years of telephone, email and visitation privileges, for Code 108A, and disallowance of 41 days of good conduct time, forfeiture of 162 days of non-vested good conduct time, 30 days of disciplinary segregation, and loss of three years of telephone, email and visitation privileges, for Code 197, were not disproportionate to your misconduct. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

Date: December 8, 2016

M. D. CARVAJAL
Regional Director



Type or use ball point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: **Venizelos, John G**    **80556053**    **A-2**    **FCI Gilmer**
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL**

I appeal the 12/8/16 response to my 11/8/16 appeal (BP-10) of the 10/24/16 DHO report. The Regional Office Administrative Remedy Appeal (BP-10) is attached hereto and incorporated by reference. For the reasons set forth previously and in the attached continuation page, I request expungement of the erroneous Code 108A and Code 197 violation findings and the reversal of the resulting onerous sanctions.

1/5/17
DATE                                    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

Ir 290-0888

Code 108A

hearing 10-11-16

RECEIVED
JAN 6 2017
Administrative Remedy Section
Federal Bureau of Prisons

DATE                                    GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE           CASE NUMBER: **882420-A**

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
SUBJECT: LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

DATE                SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL
USP LVN                                                    BP-231(13)

Respectfully, in perpetuating the wanting supposition employed by the DHO, the Response continues the failure to acknowledge or address the investigation's myriad procedural and factual deficiencies as well as the deficits in the DHO's findings and conclusions. First, not a single piece of direct evidence supports the contention that I "instructed [my] father to send cell phones to a predetermined address in Philadelphia." A 113-day investigation, which apparently included review of my monitored communications dating back to at least early 2016, did not unearth any communication where I instructed my father to do anything, let alone to send "cell phones." Indeed, contrary to the Response, the DHO cited to no evidence where I or my father refer to "cell phones." Where the Response cites to my 2/25/16 call with my father, the transcript of that call demonstrates that he advised (to the effect) that he had "sent those gifts to [my] friend Phil," to which I replied (to the effect) "I saw your e-mail."* Again, the small box in-question was addressed to a Desmond Stewart at an apparent Philadelphia rooming house, and the contents of that box, when sent in February, are not known. *Ipse dixit*, which is employed repeatedly in the Response, does not change this reality.

This then leads to the Response's next specious leap: "The receiving party at the address then placed the cell phones into a box received from another inmate at FCI Schuylkill, and returned the box to the other inmate using 'return to sender' through the U.S. Postal Service." What *the evidence* shows is that in late May/early June Inmate Michael Herlihy sent a large box to a Rob Taylor (not a Desmond Stewart), whom the DHO found to be Herlihy's "source in the community"^, at the same rooming house and that when that box was returned to the institution it contain the box my father had sent to the address some months prior, and within that box was the contraband at-issue. Significantly, the Response ignores numerous questions raised in my statement to the DHO and reiterated in my BP-10. These include, but are not limited to, where was the box my father sent maintained between February and June; who placed the cell phones (and MP3 player) into that box and when did that occur; who placed the box containing those items into the larger box that was returned to Schuylkill; and who returned that larger box.

Leaving aside that, standing alone, the failure to resolve these dispositive issues compels expungement, in his statement to the DHO Inmate Herlihy made clear that neither I nor my father played any role in his admitted misconduct: "I take full & sole responsibility for the entire thing. John Venizelos #805556-053 had no prior knowledge of this, did not conspire, was not aware of the planning, & had absolutely no part whatsoever with the attempt. The phones/MP3 player in question were purchased by <u>my</u> friend with money provided by <u>me</u> through <u>my</u> girlfriend & not by either Venizelos or his family like the shot speculates. Also, he was not an intended recipient of <u>any</u> of the electronics. He is 100% innocent of any wrongdoing and is merely implicated by coincidence." Ex. C. Despite (a) this unambiguous admission, wherein Herlihy makes clear that Taylor is his friend, and (b) the absence of evidence connecting me to either (i) Herlihy's actions (*e.g.*, no evidence of a conspiracy or agreement) or (ii) the charged violations, the Response concludes that the DHO was correct in finding that "the greater weight of the evidence supported the [unnamed] staff member's account of the incident." It does this even though, as pointed out in my BP-10, the DHO admittedly "did not consider Inmate HERLIHY's witness testimony," that is, the DHO did not make a 'greater weight' assessment notwithstanding, *inter alia*, its opportunity to question Herlihy; the DHO simply chose to disregard what Herlihy had to say in violation of my rights. DHO Rpt. at 3. The determinations set forth in the Response must be reversed.

Herlihy is also relevant with respect to the severity of my sanctions. As noted in the BP-11, I received a total effective sanction of 60 days' segregation (despite my having served more than 120 days in SHU before charges were brought); disallowance of 82 days' GCT; forfeiture of 324 days' non-vested GCT; and six years' each loss of visiting, telephone and e-mail privileges — sanctions that extend my release date more than a year and leave me effectively incapable of seeing or speaking with my family, including my elderly parents, for the balance of my prison term. The Response offers that these sanctions "were not disproportionate to [my] misconduct." Notably, Herlihy, whose Code 1997 charge the DHO expunged, received a sanction of 60 days' segregation; disallowance of 41 days' GCT; forfeiture of 70 days' non-vested GCT; and three years' each loss of visiting, telephone and e-mail privileges. Not only do the sanctions imposed against me lack a correlation to any legitimate penological need, there is no justification for their disproportionality to Herlihy's. To the extent the violations are not expunged, the sanctions must be reduced.

*I have never been provided a copy of the transcripts at-issue and cannot recall the precise wording of the exchange between me and my father nearly one year ago. The above reflects my best recollection.

^The quoted language comes from Herlihy's DHO report dated 10/24/16.

DHO Statement

ex 8

C

I, Michael Herliby #20813-171 hereby declare this a factual & truthful statement issued for the purpose of the DHO officer. In the matter of the incident reports we've received for attempted introduction of contraband into this facility, I take full & sole responsibility for the entire thing. John Venizelos #80555-053 had no prior knowledge of this, did not conspire, was not aware of the planning, & had absolutely no part whatsoever with the attempt. The phones/MP3 player in question were purchased by MY friend with money provided by ME through MY girlfriend & not by either Venizelos or his family like the shot speculates. Also, he was not an intended recipient of ANY of the electronics. He is 100% innocent of any wrongdoing and is merely implicated by coincidence.

This written admission has been made freely. I have not been threatened, bribed, coerced, or pressured into this admission by any other party. If you have questions, I'd be happy to answer them to further clarify the situation.

Michael Herliby #20813-171
X  MH



Ex - 9

**Administrative Remedy No. 882420-A1**
**Part B - Response**

You appeal the October 11, 2016 decision of the Discipline Hearing Officer (DHO) regarding incident report #2900888, where you were found to have committed the prohibited act of Attempted Possession, Introduction or Manufacture of a Hazardous Tool, Code 108A and Use of the Telephone for an Illegal Purpose or to Commit or Further a Greatest Category Prohibited Act, Code 197.

Our review of your disciplinary proceedings indicates compliance with Program Statement 5270.09, <u>Inmate Discipline Program</u>, and we concur with the response provided by the Regional Director. The DHO's decision was based upon the evidence detailed in Section V of the DHO report. We find the determination of the DHO is reasonable and supported by the evidence. Your Due Process rights were upheld during the discipline process. The sanctions imposed were commensurate to the severity level of the offense committed and in compliance with policy.

Accordingly, your appeal is denied.


_____3/29/17_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

JOHN VENIZELOS, 80556-053
GILMER FCI    UNT: A    QTR: A02-217U
P.O. BOX 5000
GLENVILLE,  WV 26351



ex· 10

July 17, 2017

Eugene Baine
Office of General Counsel
Attn: FOIA Service Center-Room 924
320 First Street  NW
Washington, DC 20534

    **Re: John Venizelos, #80556-053; Freedom of Information Request**

Dear Sirs/Ma'am:

Upon the receipt of the letter, please be advised, that under the Freedom of Information Act [FOIA], I am requesting the following information, regarding the attached/enclosed incident report: Report #2900888;

    *ALL photographs, investigative reports (S.I.S.) and other evidence (Phone and E-mail transcripts) from incident report #2900888 (see attachment). ALL phone and e-mail transcripts referenced in D.H.O. report. ALL photographs and investigative reports from incident report #2900888 that reference the address Mula Slinger
1165 Sanctuary Pkwy.
Alplaretta, GA. 30009

I wish to thank you in advance, for you time, patience, assistance and cooperation in this most pressing matter. A most expedient response in this matter, would greatly be appreciated.

Thank You once again.

Respectfully;

    7-19-17

    John Venizelos

Enclosed(s)/Attachment(s)





**ex-11**

U.S. Department of Justice
Federal Bureau of Prisons

*Mid Atlantic Regional Office*
*302 Sentinel Drive*
*Suite 200*
*Annapolis Junction, MD  20701*

September 21, 2017

John Venizelos
Reg. No. 80556-053
FCI Gilmer
P.O. Box 6000
Glenville, WV  26351          Request Number: 2017-06168

Dear Mr. Venizelos:

This is in response to the above referenced Freedom of Information Act (FOIA) request. Specifically, you requested copies of all documentation related to Incident Report Nos. 2900888 and 2859738.

In response to your request, staff located 49 pages of responsive records, which were forwarded to this office for a release determination.  After careful review, we determined 6 pages are appropriate for release in full; 33 pages are appropriate for release in part; and, 10 pages must be withheld in their entirety. Copies of releasable records are attached.

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, records were redacted or withheld in full from disclosure to you under the following exemptions: (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) and (b)(7)(F). An explanation of FOIA exemptions is attached.

If you have questions about this response please feel free to contact the undersigned, this office, or the Federal Bureau of Prisons' (BOP) FOIA Public Liaison, Mr. C. Darnell Stroble at 202-616-7750 or 320 First Street NW, Suite 936, Washington DC 20534.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information, Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001. Your appeal must be postmarked within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Matthew W. Mellady
Mid-Atlantic Regional Counsel

# Executive Review of Disciplinary Action

Inmate Name: <u>VENIZELOS, John</u>

Register No: 80556-053          Housing Unit: <u>3B</u>

Incident Report No: <u>2900888</u>          Offense Code: 108 (A)/197

Date: 10/11/16

Instructions:     *Each initial below indicates the attached disciplinary docket has been reviewed.*

Captain [(b)(6) (b)(7)(C) (b)(7)(F)]          Date   11/2/16

AW (P) [              ]          Date   11-4-16

Comments: _____

_____

_____

_____

_____

Return to     <u>Captain</u> [(b)(6) (b)(7)(C) (b)(7)(F)]

*Route to Unit Secretary, Unit 3*

## THIS ROUTING SLIP IS TO BE MADE A PERMANENT PART OF THE INMATE'S CENTRAL FILE



## FCI Schuylkill Discipline Hearing Sanction Notification

Inmate: Venizelos, John     Register Number: 80556-053
Incident Report Number: 2900888     Hearing Date: 10-9-16
Prohibited Act(s) Committed: (108) POSSESSING A HAZARDOUS TOOL (197) PHONE ABUSE, CRIMINAL.

As the result of a finding by the Discipline Hearing Officer, the above named inmate was determined to have committed a prohibited act(s). Sanction(s) imposed, include the following:
**Only the sanctions noted were imposed by the DHO. All are to be served consecutive with previously imposed, like sanctions. Any questions, contact the DHO at Ext. 5115.

| X | Sanction | Sanction Information | Remarks/Comments |
|---|---|---|---|
| ✓ | DGCT    FF GCT WH SGT    FF SGT | Days: 8265 Days: 324 non vest | Comp: 508    Law: 0 |
| ✓ | Disciplinary Segregation DS | Days: 60 | Expires: 12-9-16 cc: SHU Lt. |
| ✓ | Loss of Telephone LP PHONE | Months: 72 total | Expires: 8-1-23 cc: Inmate Support Services, Unit Officer 3B |
| | Loss of Commissary LP COMM | Months: | Expires: *No commissary purchases. cc: Inmate Support Services |
| ✓ | Loss of Visiting LP VISIT | Months: 72 total | Expires: 8-1-23 *No social visitation privileges. cc: Front Lobby, Visiting Room, Unit Manager 3B |
| | Loss of Visiting NO CONTACT LP VISITRS | Months: | Begins:                  thru cc: Front Lobby, Visiting Room, Unit Manager |
| | Loss of Job LOSE JOB | Months: | Expires:             Remove from cc: Unit Manager            Dept. Head |
| | Monetary Restitution MON REST | Amount: $ Item(s): | *Inmate to reimburse the U.S. Treasury. Commissary privileges are suspended until paid in full. cc: Business Office, Unit Manager |
| ✓ | MONETARY FINE | Amount: $287.00 | *Inmate to reimburse the U.S. Treasury. Commissary privileges are suspended until paid in full. cc: Business Office, Unit Manager 3B |
| | Confiscate Contraband CONFISCATE | held by CCS/SIS/DHO | Item(s) Confiscated: cc: CCS (or) SIA |
| | Lose Privilege, Other LP OTHER | Months: | Expires: Includes: cc:            Dept. Head |
| | Loss of Quarters CHG QTRS | Months: | Expires:           Qtrs: cc: Unit Manager |
| | Quarters Restriction RESTR QTRS | Months: | Expires: cc: Unit Manager           , Unit Officer |
| | Impound Personal Property IMPOUND | Months: | Expires: *Not to include religious items or current legal cases. cc: Unit Manager, SHU Property Officer |
| ✓ | LP OTHER - TRULINCS | Months: 72 | Expires: 10-11-22 cc: ITS, Unit Manager 3/3 |
| | LP MATTRESS | (b)(6),(b)(7) (C),(b)(7)(F)  DAYS | Expires: SHU LT, Captain |

(b)(6),(b)(7)(C),(b)  DHO:
(b)
cc: DHO File    (b)(6),(b) (7)(C),(b) (7)(F)

| Part III - Investigation | 22. Date And Time Investigation Began<br>9/28/16 1:20 pm |
|---|---|

23. Inmate Advised Of Right To Remain Silent: You Are Advised Of Your Right To Remain Silent At All Stages Of The Disciplinary Process But Are Informed That Your Silence May Be Used To Draw An Adverse Inference Against You At Any Stage Of The Institutional Disciplinary Process.  You Are Also Informed That Your Silence Alone May Not Be Used To Support A Finding That You Have Committed A Prohibited Act.
The Inmate Was Advised Of The Above Right By [(b)(6),(b)(7) (C),(b)(7)(E)]   (Date/time) 9/28/16 1:20 pm [(b)(6) (b)(7)] 10·4·16

24. Inmate Statement And Attitude

Inmate Venizelos #80556-053 was read his rights as written in section 23 of this report. Inmate Venizelos #80556-053 was provided a copy of this report.  He stated that he understood his rights. Inmate Venizelos #80556-053 had no comment.

Inmate Venizelos #80556-053 displayed a fair attitude during this investigation.

25. Other Facts About The Incident, Statements Of Those Persons Present At Scene, Disposition Of Evidence, Etc.

Inmate Venizelos #80556-053 did not request any witnesses.

26. Investigator=s Comments And Conclusions

It is the conclusion of this investigator that the report is true as written and the inmate is being charged accordingly.

27. Action Taken

Pending UDC for disposition.

Date And Time Investigation Completed   9/28/16 1:23 pm

Pr[(b)(6),(b)(7)(C),(b)(7)(F)]e Of Investigator [(b)(6),(b)(7)(C),(b) (7)(F)]

Lieutenant
Title

TRULINCS 80556053 - VENIZELOS, JOHN - Unit: SCH-C-B

------------------------------------------------------------------------------------

FROM: 80556053 VENIZELOS, JOHN
TO: (b)(6),(b)(7)(C),(b)(7)(F)
SUBJECT: RE: RE: dream
DATE: 02/25/2016 09:43 AM

wait when i got arrested, i asked you to turn on the nAS and make sure all the lights were green, you assured me they were?
you dont remember this uh oh!

(b)(6),(b)(7)(C),(b)(7)(C) on 2/24/2016 7:51 PM wrote:

>

i have no clue about the drives . i did send those gifts today and the will get them Friday. (b)(6),(b)(7)(C) wake was very crowded but
orderly. (b)(6),(b)(7)(C) looks very worn and confused.

JOHN VENIZELOS on 2/24/2016 5:21:00 PM wrote
i had a dream that you guys went to check my nas, you saw red lights on a hard drive, but didnt tell me! then i cam home and it
didnt work. hhmmmm and you didnt tell me because you didnt want to upset me! well i hope this was not a reality, when you
guys took my hard drive NAS from bay, and it was all green lights right? were do you got it now? the salt water air you think will
corrode it? that i do not think so but you never know? (b)(6) it ma be good to go turn that one every year to let the hard drives
spin?i do not know...ok thanks you let me know!



BP-A0971
AUG 11

CHAIN OF CUSTODY LOG COFRM

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

SCH # SCH-16-0066

ITEM # SCH_00163                    (Enclose with/attach to evidence)

CASE ID NUMBER: Cell phone intro          SUBJECT (If known) Venizelos #60556-053

DESCRIPTION OF ITEM: Recorded Calls placed by Venizelos to his father

DATE/TIME ITEM FOUND: June 8, 2016 @ 6:25 a.m.

LOCATION: SIS Office

SIGNATURE OF PERSON RECOVERING EVIDENCE (b)(6);(b)(7)(C);(b)(7)(F)

PRINTED NAME (b)(6);(b)(7)(C);(b)(7)(F)

EVIDENCE PLACED IN OVERNIGHT DROP BOX:

DROP-BOX BY:(printed name) _____

Date & Time: _____

Witness:(printed name) _____

EVIDENCE RECOVERED FROM OVERNIGHT DROP BOX BY:

(printed name) _____

Date & Time: _____

Witness:(printed name) _____

EVIDENCE PLACED EVIDENCE SAFE BY:

(printed name) _____

Date & Time: _____

Witness:(printed name) _____

DISPOSITION:

( ) Hold as evidence          ( ) Return to owner          ( ) Lab Analysis
( ) Return to finder          ( ) Destroy immediately       ( ) FBI
(✓) Other

REMARKS (condition of evidence):
Locked in the TruFone system

**CHAIN OF CUSTODY**

| EVIDENCE RELEASED BY: | DATE/TIME: | DESTINATION: | EVIDENCE RELEASED TO: |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

PDF                                    Prescribed by P5510

Date: 10/13/2016
Time: 09:22 AM

# Federal Bureau of Prisons
## TRUFONE
## Monitor Recorded Calls (Complex)
### Sensitive But Unclassified

| | |
|---|---|
| Location: | SCH |
| Start Date: | 1/1/2014 12:00 AM |
| Register No.: | 80556053 |
| Phone Number: | All |
| Last Name: | All |
| Call Type: | Both |
| ECN: | All |
| Station Profile: | All |
| Stations: | All |

| | |
|---|---|
| Alpha Code: | All |
| End Date: | 10/13/2016 11:59 PM |
| Register No. Profile: | All |
| Phone # Profile: | All |
| First Name: | All |
| Comment Contains: | All |
| Call Status: | Completed |
| Result Code: | All |

| | |
|---|---|
| Alerts: | |
| Unmonitored Calls Only: | N |
| Hidden Calls Only: | N |
| Locked Calls Only: | Y |
| Commented Calls Only: | N |
| Monitored Calls Only: | N |
| Missed Calls Only: | N |
| Translated Text Only: | N |

| Reg # | Name | Date | Number Called | City | Sts | Monitored | Locked | Duration | Station Name | Commented | TD | Spt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 80556053 | VENIZELOS JOHN | 6/5/2016 12:04 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 1 | 2627-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 6/2/2016 4:46 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 9 | 2628-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 5/16/2016 9:07 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 12 | 2628-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 5/8/2016 7:47 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 8 | 2628-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 4/17/2016 7:17 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 15 | 2628-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 4/14/2016 7:59 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 12 | 2628-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 4/10/2016 9:24 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 10 | 2628-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 3/27/2016 2:14 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 3 | 2628-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 3/20/2016 7:51 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 5 | 2628-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 3/19/2016 9:48 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 9 | 2628-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 3/12/2016 8:02 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 3 | 2625-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 3/7/2016 9:27 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 7 | 2628-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 3/5/2016 7:52 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 3 | 2625-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 3/3/2016 4:47 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 1 | 2625-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 3/2/2016 9:05 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 14 | 2628-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 2/28/2016 9:40 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 10 | 2628-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 2/25/2016 10:48 AM | (718)442-4410 | STATEN IS | NY | Y | Y | 6 | 2625-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 2/15/2016 8:03 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 11 | 2625-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 2/9/2016 7:09 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 3 | 2627-SCH-C-B | Y | D | C |
| 80556053 | VENIZELOS JOHN | 2/2/2016 7:34 PM | (718)442-4410 | STATEN IS | NY | Y | Y | 3 | 2625-SCH-C-B | Y | D | C |

Total Number of Calls: 120

User ID: TF2012)



*SENSITIVE - LIMITED OFFICIAL USE*



*SENSITIVE - LIMITED OFFICIAL USE*



*SENSITIVE - LIMITED OFFICIAL USE*



3601 N. 5TH STREET

PHILADELPHIA PA 19140

FedEx

THU – 10 MAR 10:30A
PRIORITY OVERNIGHT
RES
19140
PHL

TRK# 7825 5930 4800

17 BBXA

*SENSITIVE - LIMITED OFFICIAL USE*



*SENSITIVE - LIMITED OFFICIAL USE*

BP-A0293
AUG 11

**Inmate Rights at Discipline Hearing** COFRN

## U.S. DEPARTMENT OF JUSTICE

**FEDERAL BUREAU OF PRISONS**

Institution: FCI Schuylkill, PA

As an inmate charged with a violation of Bureau of Prisons rules or regulations referred to the Discipline Hearing Officer (DHO) for disposition, you have the following rights:

1. The right to have a written copy of the charge(s) against you at least 24 hours prior to appearing before the Discipline Hearing Officer;

2. The right to have a full-time member of the staff who is reasonably available to represent you before the Discipline Hearing Officer;

3. The right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence in your behalf, provided institutional safety would not be jeopardized;

4. The right to present a statement or to remain silent. Your silence may be used to draw an adverse inference against you. However, your silence alone may not be used to support a finding that you committed a prohibited act;

5. The right to be present throughout the discipline hearing except during a period of deliberation or when institutional safety would be jeopardized. If you elect not to appear before the DHO, you may still have witnesses and a staff representative appear on your behalf;

6. The right to be advised of the DHO's decision, the facts supporting that decision, except where institutional safety would be jeopardized, and the DHO's disposition in writing; and,

7. The right to appeal the decision of the DHO by means of the Administrative Remedy Procedure to the Regional Director within 20 calendar days of notice of the DHO's decision and disposition.

I hereby acknowledge that I have been advised of the above rights afforded me at a hearing before the Discipline Hearing Officer. I have further been advised that if I have previously received either a presumptive or effective parole date from the Parole Commission, a finding by the DHO that I committed the prohibited act(s) may result in a rescission or retardation by the Parole Commission of the presumptive or effective parole date.

Inmate's Name: Venizelos, John       Reg. No.: 80556-053

Inmate Signature: _____    Date: 10/4/16

Notice of rights given to inmate(Date/time): 10/4/16  2:10 Pm

by: _____ (b)(6),(b)(7)(C),(b)(7)(F) _____ ure

(This form may be replicated via WP)

Replaces BP-S293(52) of JAN 88.

PDF

Prescribed by P6270

1

BP-A0294
AUG 11

## Notice of Discipline Hearing Before the (DHO) CDFRM

**U.S. DEPARTMENT OF JUSTICE**                          **FEDERAL BUREAU OF PRISONS**

|                                          |                          |
|------------------------------------------|--------------------------|
|                                          | FCI Schuylkill, PA       |
|                                          | Institution              |
|                                          | 10/04/2016               |
|                                          | Date                     |

| TO: Venizelos, John | REG. NO.: 80556-053 |
|---------------------|---------------------|

ALLEGED VIOLATION(S): Introduction of Hazardous Tool/Cellphone (Attempt)
Use of the Phone for an Illegal Purpose

| DATE OF OFFENSE: 09/11/2016 | CODE NO.: 108(A) / 197 |
|-----------------------------|------------------------|

You are being referred to the DHO for the above charge(s).

The hearing will be held on: _____ at _____ [A.M./P.M.] at the following location:

_____

You are entitled to have a full-time staff member represent you at the hearing.  Please indicate below whether you desire to have a staff representative, and if so, his or her name.

I (do) ____ (do not) __✓__ wish to have a staff representative.

If so, the staff representative's name is: _____

You will also have the right to call witnesses at the hearing and to present documentary evidence in your behalf; provided, calling your witnesses will not jeopardize institutional safety.  Names of witnesses you wish to call should be listed below.  Briefly state to what each proposed witness would be able to testify.

I (do) __✓__ (do not) ____ wish to have witnesses.

| NAME: (b)(6),(b)(7)(C),(b)(7)(F) | CAN TESTIFY TO:  I DID NOT HELP IN THE PLAN OR AID TO INTRODUCE ANYTHING |
|----------------------------------|-----------------------------------------------------------------------|

| NAME: | CAN TESTIFY TO: |
|-------|-----------------|

| NAME: | CAN TESTIFY TO: |
|-------|-----------------|

The Discipline Hearing Officer will call those witnesses (Staff or Inmate) who are reasonably available, and who are determined by the DHO to have information relevant to the charge(s).  Repetitive witnesses and repetitive character references need not be called.  Unavailable witnesses may be asked to submit written statements.

If additional space is needed, use the reverse side of this form.  Date, sign, and return this form to the DHO.

| DATE: 10/4/16 | SIGNATURE: |
|---------------|------------|

Notice of hearing before DHO given inmate 10/4/16 2:10 PM by _____ (b)(6),(b)(7)(C),(b)(7)(F) _____
                                              Date/Time

(This form may be replicated via WP)                    Replaces BP-294(52) of JAN 88

PDF                                   Prescribed by P5270

John Venizelos 80556-053

D.H.O. Statement page 2 of 2

IT is impossible for anyone to have any facts/evidence that I commited any of the following actions because I simply did not.

1. I DID NOT Arrange, Attempt, or make plans for anything to be shipped into Schuylkill F.C.I.

2. I did not obtain or direct Anyone to obtain any cell phones or other contraband

3. I DID NOT ASK OR direct anyone to send anything to [(b)(6)(b)(7)(C)(b)(7)(F)] "contact".

4. If I was NOT put in the S.H.U. on June 7th because of these false allegations I would have been transfered to a low security prison any day. As I was out in for transfer on June 1st 2016 by my case manager MR. [(b)(6)(b)(7)(C)] therefore it would be impossible for me to have been the recepient of any contraband.

Furthermore I had NO knowledge of any of [(b)(6)(b)(7)(C)(b)(7)(F)] plans. I certainly did not help, aid, or make plans with him in anyway to introduce anything into Schuylkill F.C.I.

Questions for witness [(b)(6)(b)(7)(C)(b)(7)(F)]

1. DID John Venizelos know of any plans to introduce contraband?
2. DID John Venizelos supply you with any of the contraband?
3. DID John Venizelos help, make plans, or aid in the attempt to introduce contraband?
4. Were you planning to give John Venizelos any contraband?
5. When [(b)(6)(b)(7)(C)(b)(7)(F)] friend moved into the address or the box sent from institution?

Its is my understanding that [(b)(6)(b)(7)(C)(5)(7)(F)] "contact". did not move into that address until end of march, 2016 as reflected on his visiting list changes.

D.H.O. STATEMENT PAGE 1 of 2    EX 11

## STATEMENT OF JOHN VENIZELOS

This statement is offered with regard to the allegation that I attempted to introduce contraband into the institution.

On June 7, 2016, two other inmates were placed in SHU in connection with the contraband allegation. On June 8, I was placed in the SHU with respect to the allegation. On June 16, I was informed that the matter had been referred for prosecution. On September 13, I was informed that prosecution was declined. However, not until 9-28-2016 did I receive an incident report. In this way, staff violated policy. P.S. 5270.09 ("ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident"); *id.* (investigation begins "[a]fter you receive an incident report"). Given the lack of any legitimate institutional need for the delay, this effort to gin up a charge also clearly violates my rights.

As I understand it, the basis for the charge is staff's discovery of a box inside a larger box received at the institution on or about June 7. Specifically, reportedly affixed to the smaller box is a shipping label that (a) lists my father as the sender and a party in Philadelphia unknown to me as the recipient and (b) shows that shipment occurred in February 2016. Inside that smaller box (inside the larger box) staff reportedly found three cellular phones and an MP3 player.

Among the things about which the BOP has no known direct evidence are: (a) what was contained in the smaller box when it was shipped in February; (b) who the addressee on the smaller box label is; (c) who received the box in February; (d) where the box was stored between February and June; (e) who possessed/had access to the box between February and June; (f) when the phones and/or MP3 player were purchased, as well as where and by whom; (g) to the extent there is data on the MP3 played (for example, music), who placed it there; (h) who placed the phones and/or MP3 player into the box, or when that individual(s) did so; (i) who placed the smaller box inside the larger box, or when that individual(s) did so; (j) who received the larger box when it was sent from the institution; or (k) who returned the larger box to the institution.

In the absence of any direct evidence connecting me to the either the smaller box being used for the items in the larger box or to the items the institution discovered in the smaller box, the instant allegation represents pure supposition. Experience suggests that staff will attempt to justify the charge by claiming it is supported by "the greater weight of the evidence," namely the adverse inferences staff seeks to draw. However, as the foregoing demonstrates, such a claim is without merit. Indeed, it is belied by the fact that numerous, germane questions exist more than three months after the institution received the larger box and initiated an investigation (that presumably included MDC Philadelphia SIS staff given their proximity to the addresses/addressees on the box labels).

In addition to the above, it is particularly troubling that I have received an incident report while one of the other two people placed in SHU in connection with the matter did not. Specifically, that individual reportedly made the piece of art contained in the larger box and facilitated its being shipped to Philadelphia, only to be 'returned to sender.' It is unwarrantable that someone who played a role in creating the principal vehicle by which the contraband items were shipped into the institution is not charged but I am.

I request the opportunity to review the evidence, including the boxes and contraband items, and ask that all evidence be preserved in the event of litigation.

I WOULD ALSO LIKE TO CALL ███████████ AS A WITNESS TO THE FACT I DID NOT SUPPLY HIM WITH ANY CONTRABAND, NOR DID I help, MAKE PLANS, AID OR ABET HIM IN ANY WAY WITH



EX 12

John Venizelos
Reg.No. 80556-053
FCI Gilmer
P.O. Box 6000
Glenville, WV 26351-6000

Director, Office of Information Policy (OIP)
United States Department of Justice
Suite 11050                                          November 8, 2017
1425 New York Avenue, NW
Washington, DC 20530-0001
Certified Mail, Return Receipt of Merchandise
# 7046 2010 0000 4742 9690 2017-06168

Re: FOIA Request No. 2017-06168

Dear Director of IOP,     FREEDOM OF INFORMATION ACT APPEAL

John Venizelos does respectfully invoke the Pro-Se litigant's construction
standard rule, as proscribed by the United States Supreme Court. See Haines v.
Kerner, 404 U.S. 519-20, 92 S.Ct. 594 (1972).

AS A MATTER OF LAW

1) "The Freedom of Information Act (FOIA) requires federal agencies to disclose,
upon request, broad classes of agency records unless the records are covered by the
statute's exemptions." Students Against Genocide v. Dept. of State, 257 F.3d 828,
833, 347 U.S. App. D.C. 235 (D.C. Cir. 2001)(citation omitted). In a FOIA action,
the defendant agency has "the burden of demonstrating that the withheld
documents [requested by the FOIA requester], are exempt from disclosure." Boyd v.
Dep't of Justice, 475 F.3d 381, 385, 374 U.S. App. D.C. 372 (D.C. Cir. 2007)
(citation omitted).

2) Congress amended the FOIA resulting in its current content in 1966, with the
objective of promoting "full agency disclosure." See U.S. Dept. of Justice v.
Reporters Comm. for the Press, 489 U.S. 749, 754, 109 S.Ct. 1468, 103 L.Ed. 2d
744 (1989). When an agency receives a request that reasonably describes such
records, the agency must make those records available to the requester: See Id.
@ 754-55. While there are nine (9) expressly delineated exemptions from compelling
disclosure, the dominant objective of the act is disclosure, not secrecy. See
Dept. of Air Force v. Ross, 425 U.S. 352, 360-61, 96 S.Ct. 1592, 48 L.Ed.2d 11
(1976). The Supreme Court has explained this basic purpose as providing a way
for citizens to "know what their government is up to." See Reporters Comm., 489
U.S. at 773.

3) The Supreme Court has stated that "FOIA is focused on the citizens right to be
informed about what their government is up to." Computer Prof'ls For Soc.
Responsibility v. U.S. Secret Service, 72 F.3d 897, 904, 315 U.S. App. D.C. 258
(D.C. Cir. 1996)(Quoting Reporters Comm., 489 U.S. @ 773). Once the private
nature of a document has been established, whether or not disclosure of that
document is warranted, turns on the nature of that requested document and its
relationship to the basic purpose of the FOIA to open agency action to the light
of public scrutiny. See ReportersComm., 489 U.S. 772 (Quoting Rose, 425 U.S. @
372). To defeat privacy interests the requester must:
   a) Show that the public interests sought to be advanced is a significant one,
an interest more specific than having the information for its own sake, and; b)

-1-

John Venizelos
Page Two
November 8, 2017

shows the information sought is likely to advance that interest. Boyd, 87 F.Supp. 3d 73 (citation omitted). In determining what the government is up to, the relevant public interest is not to find out what the substance of an agency investigation is, but rather the focus is on the "Conduct" of the agency that performed the investigation.

4) The FOIA "requires" that any reasonable segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection, 5 U.S.C. § 552(b). "The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempted material"" Mead Data Cent, Inc. v. U.S. Dept. of Air Force, 566 F.2d 260, 184 U.S. App. D.C. 350 (D.C. Cir. 1977).

5) As with all FOIA exemptions the government bears the burden of proving that requested records are properly withheld. Accordingly, the obligation to prepare a detailed Vaughn index applies here fully, and the agency must "show specifically and clearly that the requested materials fall into the category of documents" that congress has exempted from mandatory disclosure. Hayden V. NSA, 608 F.2d 1381, 1390 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); see also Founding Church of Scientology of Wash. v. NSA, 610 F.2d 824, 830 (D.C. Cir. 1979).

## AS A MATTER OF FACT

### SWORN AFFIDAVIT OF JOHN VENIZELOS

State of West Virginia)
County of Gilmer          )  SS:)

John Venizelos, being first duly sworn deposes and says that:

6) On 7/22/2017 I, John Venizelos filed a FOIA requesting all documents related to BOP Incident Report Numbers 2900888 and 2859738.

7) On 9/21/2017 Matthew W. Mellady from the Mid-Atlantic Regional Office, 302 Sentinel Drive, Suite # 200, Annapolis Jct, MD, 20701, FOIA Request No. 2017-06168, determined after careful review that staff located 49 pages of responsive records, which were forewarded to this office for a release determination. After careful review this office determined that 6 pages are appropriate for release in full; and, 10 pages must be withheld in their entirety. Furthermore this office stated "Pursuant to the F.O.I.A. 5 U.S.C. § 552 records were redacted or withheld in full from disclosure to you under the following exemptions: (B)(5), (B)(6), (B) (7)(C), (B)(7)(E) and (B)(7)(F). An explanation of FOIA exemptions is attached." See Attached Response.

8) I have always claimed actual innocence as it relates to all charges in this Disciplinary Proceeding.

9) I respectfully demand the 10 pages that were withheld in their entirety to be provided, not in part, but only in whole. I was able to view my Central File. After careful review I was able to factually determine that the pages being withheld are in fact all exculpatory evidence: (A) phone call transcripts between

John Venizelos
Page Three
November   , 2017

my father and I that factually prove our conversation never involved talk of "shipping", "purchasing" or "introducing any contraband." This specific phone conversation was used against me in a misleading manner, (B) Transcripts from S.I.S. J/ Tomlinson interview with Michael Herling conducted on 9/13/16. During the interview Mr. Herlihy "clearly" tells S.I.S. Tech. J. Tomlinson that I, John Venizelos, was "not" involved in his admitted misconduct, (C) The fact that the contraband was actually found in a box that listed the return address to Mula Slinger, and in fact was "not" found in the box that was listed to George Venizelos as the Sender, as the D.H.O. and S.I.S. wrongfully stated. Moreover, the existence of the Mula Slinger box was never revealed to John Venizelos, (D) The S.I.S. J. Tomlinson's Investigative Report which clearly shows that I am innocent of all charges. This report was wrongfully used against me as evidence, and (E) The photographs of the envelope where the alleged Suboxone was found. The envelope listed the Registration Number of another inmate. The envelope factually proves that the alleged Suboxone did not "belong" to John Venizelos.

10) D.H.O. Mr. Bittenbender and S.I.S. Tech. J. Tomlinson committed the following misconduct knowingly, willfully, with malice, and have intentionally concealed their misconduct causing John Venizelos substantial prejudice and harm.

(A) During all three (3) D.H.O. hearings that took place on 6/17/16, 7/18/16, and 8/1/16 D.H.O. Bittenbender intentionally and wrongfully stated that the Registration Number 31889-160 that was found on the envelope containing the alleged Suboxone was a ficticious Registration Number that belonged to a ficticious inmate inmate that never existed. (See attachment A). On 8/8/17 during my rehearing it was factually proven that the inmate Registration Number 31869-160 found on the envelope containing the alleged Suboxone and did in fact belong to a real inmate who was incarcerated at FCI-Schuylkill the entire time, (B) On 9/28/16 S.I.S. Tech. J. Tomlinson stated in Section 11 of the Incident Report # 2900888 (See attachment B) that "I, John Venizelos, was responsible for obtaining the cell phones and other contraband and having it delivered to Herlihy's contact on the street." On 9/21/17 I received partial documents related to these charges. The photos factually prove my father George Venizelos did "not" send anything to Herlihy's contact, Rob Taylor, who DHO Bittenbender found to be "Herlihy's source in the community," and that another box existed with the return address Mula Slinger, 1165 Sactuary Pkwy, Alolaretta, GA, 30009. The Mula Slinger box is the box that contained the cell phones and other contraband. This is clearly misconduct and purposely concealing exculpatory evidence, (C) On 10/11/16, I went in front of D.H.O. Bittenbender as it relats to Incident Report # 2900888. At this time I presented a written statement (see attachment C) that clearly asks to see the evidence and asks numerous questions about the evidence. The D.H.O. ignored my statement and found me guilty. Alarmingly, the D.H.O. used the "Exculptatory" photos and the S.I.S. Investigative Report that both factually prove that the cell phones and contraband were "not" found in the box with the name George Venizelos on it, to find me guilty (See attachment D), (D) D.H.O. Bittenbender also misstated in his Factual Findings (See attachment D, page 3) that "received along with sealed contents a cellphone", See FOIA (Exhibit E) that factually proves the George Venizelos BOX was "not" sealed, (E) D.H.O. Bittenbender also misstated on page 4 of Exhibit D- that I John

John Venizelos
Page Four
November   , 2017

*12*

Venizelos "bypassed staffs ability to effectively monitor his call." See Exhibit
F that factually proves the call was indeed monitored, and (F) On June 10, 2016,
S.I.S. Tech. Tomlinson wrote a memorandum stating that he tested the suspected
Suboxone, see Exhibit F. The issue here deals with the chain of custody form,
see Exhibit G, that factually proves the evidence was never tested or released
to S.I.S. Tomlinson . As a matter of fact the last entry shows the evidence was put
in the "drop box" on 6/8/16 at 7:30 PM and never released to anyone after 6/8/16.
There is no evidence to support anything was "tested".

11) When opening an agency action to the light of public scrutiny, in determining
what the government is up to, the relevant public interest is not to find out
what the substance of an agency investigation is but rather the focus is on the
"conduct" of the agency that performed the investigation. D.H.O. Bittenbender and
S.I.S. Tomlinson both work for the government, and both committed egregious
misconduct and their misconduct is in the public interest.

12) A full denial to provide all 10 pages of exculpatory evidence in their
entirety without a valid reason is unacceptable by law. Furthermore, here the
investigation is over, not ongoing, and a particularized need outweighs the need
for secrecy, the material is needed to avoid an injustice in another
proceding, that the need for disclosure is greater than the need for continued
secrecy, the requested documents are structured to cover only material so needed,
is needed to correct a miscarriage and manifest injustude, and to vacate a
wrongfully imposed sanction.

### CONCLUSION

Please provide (1) All 10 pages of exculpatory evidence in whole not
redacted, (2) A complete Vaughn Index (See Vaughn v. Rosen,          and (3)
All complaints and all dispositions related to the complaints that were filed
against D.H.O. Bittenbender and S.I.S. Tech. Tomlison throughout their F.B.O.P.
careers.

I, John Venizelos, hereby certify under penalty of perjury (28 U.S.C. § 1746)
that all of the foregoing is true and correct to the best of my belief and knowledge.

Executed on this ___17___ , day of November, 2017.
                                                     John Venizelos

                                              Respectfully submitted,

Dated this ___h___ , day of November, 2017.
                                              John Venizelos
                                              Reg.No. 80556-053
                                              FCI-Gilmer
                                              P.O. Box 6000
                                              Glenville, WV 26351-6000

-4-